Jeremy I. Lessem, Esq (SBN 213406)
Jamal L. Tooson, Esq (SBN 261373)
Lessem, Newstat & Tooson, LLP
3450 Cahuenga Blvd W.  Ste. 102
Los Angeles, CA 90068
Phone 818-582-3087 | Fax 818-484-3087
Jeremy@LnLegal.com
JTooson@LnLegal.com

Karen Joynt (SBN 206332)
Law Office of Karen Joynt
225 S. Lake Ave., Suite 300
Pasadena, CA 91101
Phone 818-452-5145
joyntlaw@gmail.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

SILVIA SOTO, *et al*,

      Plaintiffs,

  vs.

COUNTY OF SACRAMENTO, BLAKE GRINDER, KENNETH LLOYD, JOHN HIGLEY, ANDREW GARSIDE, GREG WHITE, KELLEY BUNN, GREGORY JOHNSON, CHARLES GAILEY, SCOTT JONES, PATRICIA ROBINSON-HARD and Does 1 through 100, *et al.*

      Defendants

Case No.: 2:19-cv-00910-TLN-DB

**SECOND AMENDED COMPLAINT DAMAGES; DEMAND FOR JURY TRIAL**

1. Excessive Force – 42 USC §1983
2. Substantive Due Process – 42 USC §1983
3. Municipal Liability – 42 USC §1983
4. Survival Action – 42 USC §1983
5. Supervisor Liability – 42 USC §1983
6. Bane Act – Civ. Code §52.1
7. Wrongful Death – Negligence
8. Wrongful Death – Negligent Supervision
9. Battery
10. Failure to Provide to Medical Care & Safe Conditions  – 42 USC §1983

# I.    JURISDICTION AND VENUE

1.    This case arises under 42 U.S.C. §1983. Accordingly, subject matter jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 1343.

2.    Plaintiffs' claims arise out of a course of conduct involving officials from the County of Sacramento, in the County of Sacramento, State of California, and within this judicial district.

Plaintiffs have exhausted their remedies pursuant to Cal. Gov. § 910 et seq. by filing a Notice of Claim on January 14, 2019. That claim was denied by operation of law on February 28, 2019.

# II.    PARTIES

3.    Decedent Marshall Miles was, at all times relevant hereto, a resident of the County of Sacramento.

4.    Silvia Soto is the legal wife and successor in interest and an heir at law of Marshall Miles, the deceased. Plaintiff is a resident of the State of California and resided within the State of California and the County of Sacramento at all times herein alleged. She brings this claim for herself personally, as Marshall Miles' successor in interest and heir and as the personal representative of the estate.

5.    Plaintiff Latanya Andrews is the biological mother of decedent Marshall Miles. At relevant time herein alleged, Plaintiff Andrews was a financial dependent of her son Marshall Miles. Plaintiff is a resident of the State of California and resided within the State of California and the County of Sacramento at all times herein alleged. She brings this claim for herself personally.

6.    Plaintiff M.M.S. is the natural son and successor in interest and an heir at

law of Marshall Miles, the deceased. Plaintiff is a resident of the State of California and resided within the State of California and the County of Sacramento at all times herein alleged. He brings this claim for himself personally, by and through his guardian ad litem Silvia Soto, as Marshall Miles' successor in interest and heir and as the personal representative of the estate.

7.    Plaintiff M.M.S. is the natural daughter and successor in interest and an heir at law of Marshall Miles, the deceased. Plaintiff is a resident of the State of California and resided within the State of California and the County of Sacramento at all times herein alleged. She brings this claim for herself personally, by and through her guardian ad litem Silvia Soto, as Marshall Miles' successor in interest and heir and as the personal representative of the estate.

8.    Defendant Scott Jones was, at all times mentioned herein, the Sheriff for the city of Sacramento. Defendant Jones was responsible for the selection, promotion, supervision, training, discipline and retention of agents and employees working within the Sacramento County Sheriff's Department, including sheriff deputies, custodial staff, counselors, advisors, nurses, doctors, physician assistants, medical staff, mental health staff and supervisors; and for the implementation of policies and procedures within the Sacramento County Sheriff's Department including at the Sacramento County Main Jail. He was further responsible for the care, custody and control of all individuals detained in the Sacramento County Main Jail. Defendant Jones is sued in his individual capacity, as a supervisor for his own culpable action or inaction in the training, supervision or control of his subordinates, or his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed reckless or callous indifference for others. Defendant Jones' affirmative conduct involves his knowing failure to ensure enforcement of policies, rules or directives and his failure to train his

employees about established practices known and implemented throughout the law enforcement and corrections industry which protect detainees from harm.  This conduct set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict injuries, including a constitutional injury, on Marshall Miles.

9.     Defendant County of Sacramento ("Defendant County") is a legal and political entity established under the laws of the State of California, with all the powers specified and necessarily implied by the Constitution and the laws of the State of California and exercised by various government agents and officers. Defendant County is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and employees. At all relevant times, Defendant County was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, Defendant County was the employer of Defendants, and the Sacramento County Main Jail was a facility maintained, operated staffed and run by Defendant County and its agents. Defendant County owns, operates, manages, directs and controls the Sacramento County Sheriff's Department, and the Department of Health Services, which act as agencies of Defendant County.  Defendant County of Sacramento is vicariously liable for Defendants' wrongful conduct pursuant to Government Code § 815.2.

10.    Defendant Blake Grinder ("Deputy Grinder") is a deputy with the Sacramento County Sheriff's Department. At all relevant times, Deputy Grinder was a duly authorized employee and agent of the County of Sacramento, subject to oversight and supervision by Defendant County's elected and non-elected officials. At all times herein, Deputy Grinder acted with authority and color of law and within the perceived course and scope of

his duties as a sheriff deputy for the Sacramento County Sheriff's Department and with the complete authority and ratification of its principal, Defendant County. In committing the acts alleged herein, Deputy Grinder operated within the scope of his respective employment as a Sacramento County Sheriff deputy and with all the authority and color of law therein.

11.   Defendant Kenneth Lloyd ("Deputy Lloyd") is a deputy with the Sacramento County Sheriff's Department. At all relevant times, Deputy Lloyd was a duly authorized employee and agent of the County of Sacramento, subject to oversight and supervision by Defendant County's elected and non-elected officials. At all times herein, Deputy Lloyd acted with authority and color of law and within the perceived course and scope of his duties as a sheriff deputy for the Sacramento County Sheriff's Department and with the complete authority and ratification of its principal, Defendant County. In committing the acts alleged herein, Deputy Lloyd operated within the scope of his respective employment as a Sacramento County Sheriff deputy and with all the authority and color of law therein.

12.   Defendant John Higley ("Deputy Higley") is a deputy with the Sacramento County Sheriff's Department. At all relevant times, Deputy Higley was a duly authorized employee and agent of the County of Sacramento, subject to oversight and supervision by Defendant County's elected and non-elected officials. At all times herein, Deputy Higley acted with authority and color of law and within the perceived course and scope of his duties as a sheriff deputy for the Sacramento County Sheriff's Department and with the complete authority and ratification of its principal, Defendant County. In committing the acts alleged herein, Deputy Higley operated within the scope of his respective employment as a Sacramento County Sheriff deputy and with all the authority

and color of law therein.

13.    Defendant Andrew Garside ("Deputy Garside") is a deputy with the Sacramento County Sheriff's Department. At all relevant times, Deputy Garside was a duly authorized employee and agent of the County of Sacramento, subject to oversight and supervision by Defendant County's elected and non-elected officials. At all times herein, Deputy Garside acted with authority and color of law and within the perceived course and scope of his duties as a sheriff deputy for the Sacramento County Sheriff's Department and with the complete authority and ratification of its principal, Defendant County. In committing the acts alleged herein, Deputy Garside operated within the scope of his respective employment as a Sacramento County Sheriff deputy and with all the authority and color of law therein.

14.    Defendant Greg White ("Officer White") is an officer with the California Highway Patrol. At all relevant times, Officer White was a duly authorized employee and agent of the State of California, subject to oversight and supervision by the State of California's elected and non-elected officials. At all times herein, Officer White acted with authority and color of law and within the perceived course and scope of his duties as an officer for the California Highway Patrol and with the complete authority and ratification of its principal, the State of California. In committing the acts alleged herein, Officer White operated within the scope of his respective employment as a California Highway Patrol Officer and with all the authority and color of law therein.

15.    Defendant Kelley Bunn ("Sergeant Bunn") is a sergeant with the Sacramento County Sheriff's Department. At all relevant times, Sergeant Bunn was a duly authorized employee and agent of the County of Sacramento, subject to oversight and supervision by Defendant County's elected and non-

elected officials. At all times herein, Sergeant Bunn acted with authority and color of law and within the perceived course and scope of his duties as a sheriff deputy for the Sacramento County Sheriff's Department and with the complete authority and ratification of its principal, Defendant County. In committing the acts alleged herein, Sergeant Bunn operated within the scope of his respective employment as a Sacramento County Sheriff deputy and with all the authority and color of law therein.  Kelley Bunn was a Sergeant at all relevant times and had direct supervisory responsibility and authority over Officer Defendants Grinder, Lloyd, Higley, and Garside, as well as Officer White.

16.    Defendant Charles Gailey ("Sergeant Gailey") is a sergeant with the Sacramento County Sheriff's Department. At all relevant times, Sergeant Gailey was a duly authorized employee and agent of the County of Sacramento, subject to oversight and supervision by Defendant County's elected and non-elected officials. At all times herein, Sergeant Gailey acted with authority and color of law and within the perceived course and scope of his duties as a sheriff deputy for the Sacramento County Sheriff's Department and with the complete authority and ratification of its principal, Defendant County. In committing the acts alleged herein, Sergeant Gailey operated within the scope of his respective employment as a Sacramento County Sheriff deputy and with all the authority and color of law therein.  Charles Gailey was a Sergeant at all relevant times and had direct supervisory responsibility and authority over Officer Defendants Grinder, Lloyd, Higley, and Garside, as well as Officer White.

17.    Defendant Gregory Johnson ("Sergeant Johnson") is a sergeant with the Sacramento County Sheriff's Department. At all relevant times, Sergeant Johnson was a duly authorized employee and agent of the County of Sacramento, subject to oversight and supervision by Defendant County's

7

elected and non-elected officials. At all times herein, Sergeant Johnson acted with authority and color of law and within the perceived course and scope of his duties as a sheriff deputy for the Sacramento County Sheriff's Department and with the complete authority and ratification of its principal, Defendant County. In committing the acts alleged herein, Sergeant Johnson operated within the scope of his respective employment as a Sacramento County Sheriff deputy and with all the authority and color of law therein.  Gregory Johnson was a Sergeant at all relevant times, was the acting watch commander at all relevant times, and had direct supervisory responsibility and authority over Officer Defendants Garside, Lloyd, Higley, and Garside, as well as Officer White.

18.    Defendant Patricia Robinson Hard is a nurse employed by Defendant County through its Department of Health Services and assigned to Correctional Health Services at the Main Jail.  At all relevant times, Defendant Robinson Hard was a member of the medical staff assigned at the Main Jail with the responsibility of evaluating detainees to determine whether such detainees could safely be detained without clearance by a medical facility.  Defendant Robinson Hard is a duly authorized employee and agent of the County of Sacramento, subject to oversight and supervision by Defendant County's elected and non-elected officials.

19.    Plaintiffs are informed and believe and thereon allege that Defendants sued herein as Does 1 through 100, inclusive, were employees of Defendant County and/ or the State of California, including but not limited to, deputies, police officers and civilian staff of the Sacramento County Sheriff's Department and California Highway Patrol, and were at all relevant times acting in the course and scope of their employment and agency. Each Defendant is the agent of the other. Plaintiffs allege that each of the Defendants named as a "DOE" was in some

manner responsible for the acts and omissions alleged herein, and Plaintiffs will ask leave of this Court to amend the Complaint to allege such names and responsibility when that information is ascertained.

20.    Plaintiffs are informed and believe, and thereon allege, that, at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of other co-Defendants. Each paragraph of this Complaint is expressly incorporated into each cause of action which is a part of this Complaint. The acts and omissions of all Defendants were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to the rights of Decedent and Plaintiffs.

21.    Plaintiffs are informed, believe, and thereon allege that at all times material herein, each fictitiously named Defendant, was either the true Defendant or the agent and employee of each other Defendant and in doing the things alleged herein, was acting within the scope and purpose of such agency and with the permission and consent of, and their actions were ratified by, the other Defendants.

22.    Additionally, Defendants Bunn, Gailey, Johnson, Jones and one or more of Does 1-100 are liable for Plaintiffs' injuries under federal law principles of 42 U.S.C. § 1983 supervisory liability because, in their role as supervisors, they acted, or failed to act, in a manner that was deliberately indifferent to Plaintiffs' (and decedent's) constitutional rights, based on their knowledge of and acquiescence in unconstitutional conduct that caused Mr. Miles' death and Plaintiffs' injuries. *Starr v. Baca* (9th Cir. 2011) 652 F.3d 1202.

## III.    FACTS RELEVANT TO ALL CAUSES OF ACTION

23.    Marshall Miles was 36 years old and in good health. He lived with his

wife Silvia Soto and his two biological children, Marcelo and Marlenie. He also took care of his mother, Latanya Andrews, who was financially dependent on decedent at the time of his death. The entire family had a deep meaningful and loving relationship.

24.     On October 28, 2018 at approximately 8:30pm, Marshall Miles was arrested by California Highway Patrol Officer Defendant White, in the city of North Highlands, County of Sacramento, on suspicion of vandalism and public intoxication. During the course and scope of the arrest, Defendant White violently forced Marshall Miles onto his stomach and drove a knee into his back. This act caused substantial pain and injury to Mr. Miles' stomach, back and neck areas. This use of force was unnecessary, excessive and contrary to department training and policy. At the time of the use of Mr. Miles was not a threat to the officer nor forcibly resisting the officer's commands.

25.     Marshall Miles was booked into custody at the Sacramento County Main Jail at approximately 9:46pm.

26.     When Marshall Miles arrived at the Sacramento County Main Jail he was in the custody and control of Defendant White and at least two deputies with the Sacramento County Sheriff's Department. Upon being delivered to the garage area of the jail facility, Mr. Miles became agitated and upset because of the violent treatment against him. As a result of this agitation, several additional deputies from the Sacramento County Sheriff's Department arrived to assist the attending deputies. These deputies include, but are not limited to, Defendants Grinder, Lloyd, Higley and Garside. Additionally, at this time, supervisory Defendants Sergeant Kelley Bunn and Sergeant Charles Gailey, joined these deputies to supervise, manage and control the arrest and transportation of Decedent Marshall Miles. At this time, these deputies from

both the California Highway Patrol and the Sacramento County Sheriff's Department pinned Marshall Miles face down to the ground, applied a hogtie restraint, a dangerous device not approved by law enforcement agencies, and physically carried  him face down to the arrest report room of the Sacramento County Main Jail.

27.    While on the ground inside the arrest report room area of the jail, Defendant Deputy Garside joined previously named Defendants White, Grinder, Lloyd, and Higley in forcibly holding down Mr. Miles by placing their knees into the back, neck and head of Mr. Miles. This was done while Mr. Miles was positioned face down on his stomach. While being pinned down to the ground with the full body weight of these aforementioned officers, Mr. Miles' ankles and wrists remained shackled and handcuffed.  During this process, Marshall Miles explicitly told officers that he couldn't breathe. However, no effort was made by officers to listen to Mr. Miles' complaints. Mr. Miles was left in this position for an excessive period of time causing pressure to his lungs, airway, and other vital organs impeding his respiration.

28.    While on the ground inside the arrest room,  Nurse Patricia Robinson Hard attempted to take a blood pressure and pulse reading of Miles while he lay on the floor, face down, restrained at the ankles and wrists with the aforementioned Officers on top of him and numerous other persons, both officers and civilians, present to observe.  Nurse Robinson Hard could not and did not make any physical evaluation of Miles's conditions and did not ask him any questions.  Nurse Robinson Hard did not object to this setting and circumstances which she knew or should have known was completely inappropriate for a sufficient and accurate clinical evaluation and care.  The purported evaluation of Miles lacked any and all privacy protections Miles should have been afforded.  Nurse Robinson Hard then approved Miles for

admission to the Jail when he clearly needed some, and certainly greater, medical care than he was given in the arrest report room.

29.     At all relevant times throughout the detention, Supervisory Defendants Sergeant Bunn, Sergeant Johnson, and Sergeant Gailey, failed to provide proper guidance, intervention, and direction to the other Defendant Deputies and Officers. This failure was despite the fact that they knew or should have known the Officer Defendants' actions were violations of policy and Miles' constitutional rights.

30.     Defendant deputies Grinder, Higley, Lloyd, and Garside, each supporting a different limb, carried Mr. Miles face down to segregation cell three. While being carried down the hall, Mr. Miles cried out again that he was having difficulty breathing. And again, no remedial action was taken by officers to address these complaints, nor was any supervisory action taking by Sergeants Bunn, Gailey and Johnson to prevent further injury or death to Mr. Miles.

31.     Once Marshall Miles was carried to segregation cell three, Defendant Deputies and Officers, including but not limited to, Defendants Grinder, Higley, Garside, and Lloyd, placed Mr. Miles face-down on the floor of the cell. While unshackling Mr. Miles, defendant deputies, in full gear, placed their knees on his back, neck legs and head, and applied pressure using their full body weight. While placed in this position, the pressure applied to Mr. Miles' back and neck area caused his chest and lungs to compress to the point that Mr. Miles could no longer breathe. While this force was being applied, Mr. Miles stopped breathing and lost consciousness.  During this time, Supervisory Defendants Sergeants Johnson, Bunn and Gailey did nothing to prevent these actions or in any attempt to intervene in actions likely to cause serious bodily injury or death.

32.     For several minutes after Mr. Miles lost consciousness, Defendant Officers failed to even notice that Mr. Miles was no longer communicating or breathing. Instead, they continued to apply force while additional officers attempted to remove the shackles from his wrists and ankles. Once the shackles were finally removed, Defendant Officers left Marshall Miles unconscious and unattended, face-down on the concrete floor of the cell. Before exiting the cell, none of the officers attempted to check Mr. Miles' pulse or otherwise ascertain his wellbeing.

33.     Marshall Miles laid lifeless on the concrete floor of segregation cell three without moving, in full view of all Defendant Deputies and Supervisors, as well as numerous other law enforcement personnel, for approximately one full minute. When law enforcement personnel finally decided to re-enter his cell it was already too late. Mr. Miles was unconscious and had stopped breathing.

34.     Upon re-entering the cell, law enforcement personnel attempted to resuscitate Mr. Miles. The paramedics were called, and Mr. Miles was transported to Sutter Medical Center. Mr. Miles never regained consciousness and was pronounced dead at Sutter Medical Center on November 1, 2018.

35.     At Sutter Medical Center, attending physicians determined that Mr. Miles suffered diffuse anoxic brain injury, due to suffocation, which led to brain death on October 29, 2018.

36.     At the time of Mr. Miles' admission to Sutter Medical Center, attending officers failed to inform medical personnel that force had been applied to Mr. Miles at the time of his losing consciousness, thereby preventing medical staff from being fully informed of the patient's medical circumstances. This omission was intentional, and adversely affected the medical care provided.

37.     At all relevant times, Defendant Grinder, Defendant Bunn, Defendant Gailey, Defendant Lloyd, Defendant Higley, Defendant Johnson, Defendant

Garside, and Defendant White were aware, or should have been aware, that Mr. Miles was under the influence of a controlled substance.

38.     During the course and scope of the actions described above, all of the defendants, including Defendant County, Defendant Grinder, Defendant Bunn, Defendant Gailey, Defendant Lloyd, Defendant Higley,  Defendant Johnson, Defendant Garside, Defendant White, Defendant Jones and DOES 1 through 100, acted in a manner, or allowed others to act in a manner, that was contrary to well-established use-of-force rules and protocols, and in so doing, behaved in a manner that was excessive, illegal and inhumane. And by acting in this fashion, caused the death of Marshall Miles.

39.     The actions and inactions of the County of Sacramento, Deputy Grinder, Sergeant Bunn, Sergeant Johnson, Sergeant Gailey, Deputy Lloyd, Deputy Higley, Deputy Garside, Officer White, Sheriff Jones, Does 1 through 100 and other unknown officers, employees and agents of the Sacramento County Sheriff's Department and California Highway Patrol, as set forth in the preceding paragraphs were known or should have been known to the policy makers responsible for the Defendant County and occurred with deliberate indifference to the strong likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline in areas where the need for such training was obvious. The specific areas wherein defendants failed to adequately train and supervise include, not are not limited to, (a) The proper application of the use of force, (b) Recognizing and responding to indications of medical distress, and (c) Proper application of protocols involving the dangers of positional asphyxiation.

40.     The actions and omissions of Defendants County, their law enforcement personnel, Defendant Grinder, Defendant Bunn, Defendant Johnson, Defendant Gailey, Defendant Lloyd, Defendant Higley, Defendant Garside, Defendant White, Defendant Robinson-Hard, Defendant Jones and Does 1 through 100 set

forth in the preceding paragraphs were a motivating force behind the violations of Marshall Miles' constitutional rights as set forth in this Complaint.

## IV.    FIRST CAUSE OF ACTION EXCESSIVE FORCE -DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983

### Against Defendants Grinder, Bunn, Johnson, Gailey, Lloyd, Higley, Garside, White and Does 1 through 100

41.    Plaintiffs repeat, reallege, and incorporate each and every allegation contained in each of the paragraphs above, as though fully set forth herein.

42.    Defendants' actions deprived Marshall Miles of his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable excessive force by those acting under color of state law.

43.    Defendants violated the rights of Marshall Miles under the Fourth and Fourteenth Amendments when they wrongfully, unreasonably, unjustifiably, negligently and/or recklessly committed the following acts (1) Physically assaulted Mr. Miles during the course and scope of his arrest and detention; (2) Applied extreme pressure to Mr. Miles' neck, back and head while simultaneously positioning him face down on a concrete floor, which caused him to suffocate and die; (3) Misused restraint devices and control holds, including opposing and dual control holds, and failed to use available alternatives; and (4) otherwise failed to timely intervene with life-saving efforts when Mr. Miles stopped breathing and lost consciousness as a result of the force applied by officers.  Such conduct constituted excessive force under the circumstances known to the officers at the time.

44.    At all times relevant hereto, defendants were acting in the course and scope of their employment with Defendant County.

45.    As a result of their conduct, Defendants are liable for Mr. Miles' injuries, either because they were integral participants in the misconduct, because they

failed to intervene when they had the opportunity to do so to prevent these violations, or because they allowed such misconduct to occur and continue.

46.    As a direct and legal result of Defendants' acts and omissions, Mr. Miles suffered damages, including without limitation, pain and suffering, extreme mental and emotional distress, serious physical injury, death, attorney's fees, costs of suit and other pecuniary losses not yet ascertained.

47.    As a direct and legal result of Defendants' acts and omissions, Plaintiffs have been deprived of decedent's love, care, comfort, affection, society, presence, companionship, protection, future support, financial support and services, and a loss of intangible qualities of the spousal and familial relationship. The foregoing has caused Plaintiffs to suffer economic and non-economic damages.

48.    Plaintiffs allege that the acts and omissions of Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in conscious disregard of Mr. Miles' rights, welfare and safety, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

49.    Plaintiffs' claims against Defendants Bunn, Johnson, and Gailey, and one or more Defendant Does are based on the principles of supervisory liability and conduct previously described herein.

50.    As a further direct and legal result of the conduct of said defendants, and each of them, decedent Marshall Miles was killed, and Plaintiffs sustained the damages as above alleged.

V.    **SECOND CAUSE OF ACTION SUBSTANTIVE DUE PROCESS – DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**

**Against Defendants Grinder, Bunn, Johnson, Gailey, Lloyd, Higley, Garside, White and Does 1 through 100**

51.    Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

52.   At all times relevant hereto, defendants were acting in the course and scope of their employment with Defendant County.

53.   Defendants' actions deprived Plaintiffs of their rights under the Fourteenth Amendment to the United States Constitution to be free from conscience-shocking behavior from those acting under color of state law.

54.   Defendants violated Plaintiffs' rights under the Fourteenth Amendment when they wrongfully, unreasonably, unjustifiably, negligently and/or recklessly killed Marshall Miles by suffocating and killing him while he was in law enforcement custody.

55.   Plaintiffs' claims against Defendants Bunn, Johnson, and Gailey, and one or more Defendants Does, are based on the principles of supervisory liability and conduct previously described herein.

56.   As a result of their conduct, Defendants are liable for Mr. Miles' injuries, either because they were integral participants in the misconduct, because they failed to intervene when they had the opportunity to do so to prevent these violations, or because they allowed such misconduct to occur.

57.   As a direct and proximate result of the conduct of Defendants, Marshall Miles was caused to suffer severe and ultimately fatal injuries.

58.   As a legal, direct and proximate result of the conduct of Defendants, Plaintiffs have incurred medical, funeral and burial expenses in an amount to be stated according to proof.

59.   As a legal, direct and proximate result of the conduct of Defendants, Plaintiffs as wife, mother and children of decedent Marshall Miles, have sustained damages resulting from the loss of love, affection, society, service, comfort, support, right of support, expectations of future support and counseling, companionship, solace and mental support, as well as other benefits and assistance, of decedent Marshall Miles.

60.     As a legal, direct and proximate cause of the conduct of Defendants, Plaintiffs will be deprived of the financial support and assistance of decedent Marshall Miles, the exact amount of such losses to be stated according to proof

61.     Plaintiffs allege that the acts and omissions of Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in conscious disregard of Plaintiffs' rights, welfare and safety, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

## VI.     THIRD CAUSE OF ACTION MONELL VIOLATIONS – DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983

### Against Defendant County of Sacramento

62.     Plaintiffs repeat, reallege, and incorporate each and every allegation contained in each of the paragraphs above, as though fully set forth herein.

63.     Plaintiffs are informed and believe and thereon alleges that, at all times herein mentioned, Defendant County of Sacramento, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiffs, engaged in the unconstitutional conduct and omissions as is specifically elaborated throughout this complaint.

64.     At all times herein mentioned, Defendant County and its Sheriff Department, ratified the wrongful acts of Defendants Does 1 through 100. The wrongful conduct of Defendant Does 1 through 100 was the result of policies, practices and customs to subject detained individuals at the Sacramento County Sheriff's Department Main Jail to unconstitutionally inadequate treatment; permit and promote unsafe conditions for detained persons leading the excessive use of force by County deputies and support personnel; and cover-up incidents of unconstitutional behavior by members of the Sacramento County Sheriff's Department staff.

65.     The actions and inactions of the Defendant County and its Sheriff's

Department, including its main jail staff as set forth above, were known, or should have been known to the policy makers responsible for the County of Sacramento, and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and/or to the strong likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline in areas where the need for such training and supervision was obvious.

66.    The actions of the Sacramento County Sheriff's Department, including its sheriff deputies and civilian staff, set forth herein, were a motivating force behind the violations of Plaintiffs' constitutional rights as set forth in this Complaint.

67.    As a direct and proximate result of Defendant Sacramento County's acts and omissions, condoning, encouraging, ratifying and deliberately ignoring the pattern and practice of Defendant Does 1-100 acts and omissions, Plaintiffs sustained injury and damage as set forth herein.

68.    As a result of Defendants', and each of their, violations of decedent Marshall Miles' constitutional rights as set forth herein, Plaintiffs were damaged as alleged above.

## VII.    FOURTH CAUSE OF ACTION SURVIVAL ACTION – DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
### Against Defendants Grinder, Bunn, Johnson, Gailey, Lloyd, Higley, Garside, White, Jones and Does 1 through 100

69.    Plaintiffs repeat, reallege, and incorporate each and every allegation contained in each of the paragraphs above, as though fully set forth herein.

70.    Plaintiffs Silvia Soto, Marcello M.S., and Marlenie M.S., through their guardian ad litem, are the Successors in Interest and Personal Representatives of the Estate of Marshall Miles.

71.    As set forth throughout this complaint, Defendants Grinder, Lloyd, Higley, Garside, White, and Does 1 through 100, used excessive force and failed to

PLAINTIFFS' SECOND AMENDED COMPLAINT

provide safe conditions of confinement and needed medical care. The Defendants' use of excessive force, as set forth above, was the direct and proximate cause of Marshall Miles' injuries prior to death and death. The Supervisor Defendants, including Defendants Bunn, Johnson, Gailey, Jones and Does 1 through 100, were also an actual and proximate cause of Mr. Miles' death, in that they failed to adequately supervise and train the Officer Defendants, they recklessly disregarded the probability that this lack of supervision and training would result in the violation of constitutional rights, and this lack of supervision and training actually resulted in the violation of constitutional rights, knew or reasonably should have known that that the Officer Defendant's conduct would deprive Decedent and Plaintiffs of their rights, and failed to prevent the Officer Defendants' conduct, to wit, Miles' right to be free from excessive force, as well as his right to be free from punishment without due process and cruel and unusual punishment and the Officer Defendants' failure to provide safe conditions of confinement and needed medical care.

72.    As a result of the conduct of Defendants as more fully described above, the Estate of Marshall Miles has suffered and continues to suffer injuries and damages as set forth in the Damages section of this complaint, including but not limited to economic damages and medical bills.

73.    The Officer Defendants, including Defendants Grinder, Lloyd, Higley, Garside, White and Does 1 through 100, who used excessive force against Marshall Miles, leading to his death, and the Supervisor Defendants, including Bunn, Johnson, Gailey and Does 1 through 100, who failed to adequately supervise and train the Officer Defendants, were acting within the course and scope of their employment with their respective public entity employers at the time they engaged in the above-referenced misconduct.

74.    Those damages, as allowed by California Code of Civil Procedure § 377.30

PLAINTIFFS' SECOND AMENDED COMPLAINT

and 377.34, include, but are not limited to, the Decedent's pain and suffering, emotional distress, and economic harm and losses, as set forth in the "Damages" section below and the Prayer for Relief.

## VIII.  FIFTH CAUSE OF ACTION FAILURE TO SUPERVISE AND TRAIN CAUSING CONSTITUTIONAL VIOLATIONS – DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983

### Against Supervisory Defendants Bunn, Gailey, Johnson, Jones and Does 1 through 100

75.     Plaintiffs repeat, reallege, and incorporate each and every allegation contained in each of the paragraphs above, as though fully set forth herein.

76.     At all times relevant hereto, the Supervisor Defendants acted under the color of state law and were acting in the course and scope of their employment with Defendant County, which duties included supervision of subordinate officers.

77.     The Officer Defendants, including Deputy Grinder, Deputy Lloyd, Deputy Higley, Deputy Garside, Officer White and Does 1 through 100, lacked adequate supervision and training to appropriately handle their encounter with Miles, resulting in the violation of Miles' right to be free from unreasonable seizures through the use of excessive force, as well as his right to be free from punishment without due process and cruel and unusual punishment.

78.     The Supervisor Defendants, including Sergeant Bunn, Sergeant Johnson, Sergeant Gailey, Sheriff Jones and  Does 1 through 100, were deliberately indifferent to the Officer Defendants' lack of adequate training and supervision in dealing with non-complaint individuals and in de-escalating rather than escalating potentially volatile situations. The uniformity with which multiple officers failed to comply with both Sacramento County Sheriff and CHP policies, procedures, and POST training requirements demonstrates a widespread lack of training and supervision in both agencies.

79.     The Supervisor Defendants' failure to adequately supervise and train the Officer Defendants was a moving force in causing Miles' death. That is, this lack of adequate supervision and training was both an actual and proximate cause of the violation of Miles' right to be free from excessive force and free from punishment without due process and cruel and unusual punishment.

80.     As a legal result of the conduct of Defendants Bunn, Johnson, Gailey, Jones and Does 1 through 100, as described above, plaintiffs were damaged as alleged herein and as set forth above.

## IX.     SIXTH CAUSE OF ACTION VIOLATION OF THE BANE CIVIL RIGHTS ACT

### Against Defendants Grinder, Lloyd, Higley, Garside, White and Does 1 through 100

81.     Plaintiffs reallege each of the paragraphs above, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

82.     On or about the above stated dates, Defendant Grinder, Lloyd, Higley, Garside, White and Does 1 through 100, inclusive, violated Decedent's and Plaintiffs' civil rights, guaranteed by the United States Constitution, federal law, the California Constitution and the laws of the State of California thereby violating California Civil Code Sections 52, 52.1(a) and 52.1(b).

83.     Defendants intentionally interfered with the Decedent's and Plaintiffs' civil rights by committing intentional and repeated violent acts upon the Decedent as described herein.

84.     Defendants interfered with or attempted to interfere with Plaintiffs' and Decedent's right to be free from state actions that deprive them of life, liberty, or property by threatening or committing violent acts. Defendants used threats, intimidation and coercion against the Decedent, and in doing so engaged in a violation of Decedent's constitutional right to life and liberty.

PLAINTIFFS' SECOND AMENDED COMPLAINT

85.     Defendants interfered with or attempted to interfere with Plaintiffs' right to be free from unwarranted interference with their familial relationship with Decedent by threatening or committing violent acts.

86.     Defendants injured Plaintiffs and Decedent to prevent them from exercising the above-mentioned rights or retaliate against them for having exercised the above-mentioned rights.

87.     Plaintiffs and Decedent were harmed.

88.     Defendants' conduct caused or was a substantial factor in causing Plaintiffs' and Decedent's harm.

89.     By reason of the aforementioned acts and omissions, Plaintiffs have suffered and continue to suffer injuries and damages, including but not limited to pain and suffering, emotional distress, loss of companionship and society, and economic harm, including loss of economic assistance for the necessaries of life, as set forth in the Damages section of this complaint and the civil penalties set forth in Civil Code Section 52.

90.     The conduct of the Defendants amounts to oppression, fraud, or malice within the meaning of Civil Code Section 3294 et seq., and punitive damages should be assessed against each non-municipal Individual Defendant and Doe Defendant for the purposes of punishment and deterrence.

## X.     SEVENTH CAUSE OF ACTION WRONGFUL DEATH - NEGLIGENCE

### Against All Defendants

91.     Plaintiffs repeat, reallege, and incorporate each and every allegation contained in each of the paragraphs above, as though fully set forth herein.

92.      Decedent was entitled to a duty of care by Defendants.

93.     At all relevant times, Defendants breached the duty of care owed to Decedent through the various acts and omissions described throughout this

Complaint.

94.     Defendants failed to exercise ordinary care  for Marshall Miles' reasonable security and welfare, in that they failed to properly evaluate his medical condition prior to and upon admission to the Jail, failed to communicate relevant health information to others, failed to monitor his health before, during, and after applying significant force to his head, neck and chest area, despite repeated warnings from Mr. Miles that he was having trouble breathing as a result of Defendants actions, used restraint devices and control holds outside of the relevant standard of care and failed to use available alternative restraint devices that would not impair Miles' welfare consistent with the relevant standard of care. Once Mr. Miles was observed lying motionless and appeared not be breathing, Defendants failed to take any remedial action, or attend to Decedent in any way, for approximately one minute. During this time Decedent's medical condition was permitted to worsen, ultimately leading to his death.

95.     Once the care and treatment of Marshall Miles was taken over by medical professionals, Defendant attending officers, including Defendants Grinder, Bunn, Johnson, Gailey, Lloyd, Higley, Garside, White, Jones and Does 1 through 100, failed to inform medical personnel that force had been applied to Mr. Miles at the time of his losing consciousness, thereby preventing paramedic and ultimately hospital medical staff from being fully informed of the patient's medical circumstances.

96.     At all times relevant hereto, defendants were acting in the course and scope of their employment with Defendant County.

97.     As a direct and proximate cause of the negligence of said Defendants, and each of them, decedent Marshall Miles was hurt and injured in his health, strength, and activity, and ultimately died on or about November 1, 2018. He suffered unjustifiable and substantial physical pain and mental suffering before his death.

98.     As a direct and legal result of the medical negligence of said Defendants, and each of them, Plaintiffs have been deprived of decedent's love, care, comfort, affection, society, presence, companionship, protection, future support, financial support and services, and a loss of intangible qualities of the spousal and familial relationship. The foregoing has caused Plaintiffs to suffer economic and non-economic damages.

99.     As a further direct and legal result of the death of Marshall Miles, Plaintiffs, as successors in interest to the decedent, have incurred and are responsible for the payment of funeral, burial expenses, and other related expenses following his death.

100.   As a further direct and legal result of the negligence of said defendants, and each of them, decedent Marshall Miles was killed, and Plaintiffs sustained the damages as above alleged.

# XI.   EIGHTH CAUSE OF ACTION WRONGFUL DEATH  - NEGLIGENT SUPERVISION AND TRANING

## Against All Supervisor Defendants, Sheriff Jones, and Defendant County

101.   Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

102.   At the time of their interaction with Marshall Miles on October 28, 2018, the Officer Defendants, including Grinder, Lloyd, Higley, Garside, White and Does 1 through 100, were unfit and/or incompetent to perform their duties as Sacramento County Sheriff and CHP officers.

103.   The Supervisor Defendants, including Defendants Bunn, Johnson, Gailey, Jones and Does 1 through 100, knew or should have known the Officer Defendants were unfit and/or incompetent to perform their duties as Sacramento County Sheriff and CHP officers.

104.   The Officer Defendants' unfitness and incompetence and, in particular, their

lack of supervision and training actually and proximately resulted in Miles' death.

105.    The Supervisor Defendants' failure to supervise and train the Officer Defendants was a substantial factor in causing Miles' death.

106.    Because the Supervisor Defendants' duty to supervise and train the Officer Defendants falls within the course and scope of the Supervisor Defendants' duties as Sacramento County Sheriff and Sergeants, Sacramento County, pursuant to Government Code § 815.2, is vicariously liable for the harm arising from the Supervisor Defendants' failure to supervise and train the Officer Defendants.

## XII.    NINTH CAUSE OF ACTION BATTERY

**Against Defendants Grinder, Lloyd, Higley, Garside, White and Does 1 through 100**

107.    Plaintiffs reallege each of the paragraphs above, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

108.    Defendants Grinder, Lloyd, Higley, Garside, White and Does 1 through 100, while working as law enforcement officers for their employers, public entities, and acting within the course and scope of their duties, intentionally attacked and brutalized Decedent Marshall Miles when they violently forced Marshall Miles onto his stomach and drove a knee into his back at the time of his arrest, as well as when they forcibly held Mr. Miles down by placing their knees into the back, neck and head of Mr. Miles. This was done on at least two occasions during the booking process while Mr. Miles was positioned face down on his stomach and eventually led to his suffocation and death.

109.    As a result of their conduct, Defendants are liable for Mr. Miles' injuries and death, either because they were integral participants in the misconduct, because they failed to intervene when they had the opportunity to do so to prevent these violations, or because they were negligent in allowing such misconduct to occur and continue.

110.   As a proximate cause of the unlawful assault by Defendants, Decedent was severely injured and killed, thereby causing Plaintiffs to sustain the losses and damages as alleged in this complaint, including but not limited to pain and suffering, emotional distress, loss of companionship and society, and economic harm, including loss of economic assistance for the necessaries of life, as set forth in the Damages section of this complaint and requested in the Prayer for Relief.

111.   A reasonable person in Decedent's situation would have been offended by the touching and offended by the unnecessary attack.

112.   Plaintiffs allege that the acts and omissions of the Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in conscious disregard of Mr. Miles' rights, welfare and safety, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

### XIII.  TENTH CAUSE OF ACTION - 42 U.S.C. § 1983
### FAILURE TO PROVIDE ADEQUATE MEDICAL CARE
#### Against All Defendants except for Defendant County and Does 1 - 100

113.   Plaintiffs reallege each of the paragraphs above, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

114.   Defendants acted under color of law within the course and scope of their duties when they acted or failed to act which resulted in the deprivation of a constitutional right or federal statutory right.

115.   Decedent has a right under the Fourteenth Amendment to safe conditions of confinement and the provision of medical care while in custody.

116.   Defendants made intentional decisions regarding the conditions under which Decedent was detained and confined and/or the denial of needed medical care when they failed to take Decedent to a medical facility prior to booking, failed to sufficiently evaluate his medical condition at the Main Jail, failed to transport him to an appropriate level of medical care after his arrival at the Main Jail, failed to

sufficiently monitor his health and welfare, used techniques, protocols, and practices which impaired his medical condition, and failed to comply with their own training and policies in a manner which impaired his medical condition.

117.    Defendants failed to take reasonable available measures to reduce the risk of harm including following their own training and policies, providing a sufficient medical evaluation, taking him to the appropriate level of medical care, and using alternative restraint devices and protocols to reduce harm.

118.    Defendants obvious failures to take such measures caused the Decedent's and Plaintiffs' injuries.

### XIII.  PRAYER FOR RELIEF

Wherefore, Plaintiffs request entry of judgment in their favor and against Defendants as follows:

1.  For general and compensatory damages, in a sum according to proof at trial;

2.  For special damages in an amount according to proof;

3.  For punitive and exemplary damages against each individual and Doe Defendant, but not against Defendant County or State, in an amount according to proof;

4.  For interest as allowed by law;

5.  For cost of suit including attorney's fees pursuant to 42 U.S.C. § 1988 and California Civil Code §52.1 *et seq.*; and

6.  For such other and further relief as the court may deem proper.

**LESSEM, NEWSTAT, & TOOSON, LLP.**

DATED: April 3, 2020

By:
_____*/S/ Jeremy Lessem* _____
Jeremy I. Lessem
Attorney for Plaintiffs

PLAINTIFFS' SECOND AMENDED COMPLAINT

28

**LAW OFFICE OF KAREN JOYNT**

DATED: April 3, 2020

By:

_____/S/ Karen Joynt _____

Karen Joynt
Attorney for Plaintiffs

**JURY DEMAND**

Plaintiffs hereby demand trial by Jury on all issues so triable.

**LESSEM, NEWSTAT, & TOOSON, LLP.**

DATED: April 3, 2020                    By:

_____/S/ Jeremy Lessem_____

Jeremy I. Lessem
Attorney for Plaintiffs

PLAINTIFFS' SECOND AMENDED COMPLAINT