UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVIA SOTO, LATANYA ANDREWS, and minors M.M.S. and M.M.S., by and through their guardian *ad litem*, SILVIA SOTO, individually and as successors-in-interest to the ESTATE OF MARSHALL MILES,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SACRAMENTO, BLAKE GRINDER, KENNETH LLOYD, JOHN HIGLEY, ANDREW GARSIDE, GREG WHITE, KELLEY BUNN, GREGORY JOHNSON, CHARLES GAILEY, SCOTT JONES, PATRICIA ROBINSON-HARD, and Does 1 through 100,<br><br>Defendants. | No. 2:19-cv-00910-TLN-DB<br><br>**ORDER** |

This matter is before the Court on Plaintiffs Silvia Soto, individually and as guardian ad litem for M.M.S. and M.M.S., and Latanya Andrews's (collectively, "Plaintiffs") Motion to Modify the Court's Pretrial Scheduling Order. (ECF No. 58.) Defendants Kelley Bunn, County of Sacramento, Charles Gailey, Andrew Garside, Blake Grinder, John Higley, Gregory Johnson,

///

///

1

Scott Jones, and Kenneth Lloyd (collectively, "Defendants") filed an opposition.[1] (ECF No. 61.) Plaintiffs filed a reply. (ECF No. 64.) For the reasons set forth herein, Plaintiffs' motion is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' claims arise from the in-custody death of Marshall Miles (the "Decedent"). (*See generally* ECF No. 43.) On October 28, 2018, the Decedent was arrested by California Highway Patrol Officers and booked at the Sacramento County Main Jail. (*Id.* at 10.) During his arrest, deputies from the California Highway Patrol and the Sacramento County Sheriff's Department held the Decedent's face on the ground and placed their knees onto his back, neck, and head. (*Id.* at 10–13.) During the restraint, the Decedent stopped breathing and lost consciousness. (*Id.*) The Decedent was transported to Sutter Medical Center and pronounced dead on November 1, 2018. (*Id.*) On November 7, 2018, Sacramento County Coroner Pathologist James Tovar ("Dr. Tovar") performed an autopsy of the Decedent, whereby he concluded that the cause of death was "complications of cardio-pulmonary arrest during restraint and mixed drug intoxication." (ECF No. 58 at 4.)

Plaintiffs initiated this action on May 20, 2019. (ECF No. 1.) The operative Second Amended Complaint ("SAC") asserts various federal and state claims, including excessive force, wrongful death, and failure to provide adequate medical care and safe conditions. (*See* ECF No. 43.) On May 21, 2019, the Court issued an initial Pretrial Scheduling Order setting the non-expert discovery deadline for January 8, 2021, and the expert witness disclosures deadline for March 9, 2021. (ECF No. 4.) These deadlines were subsequently extended by stipulation to February 5, 2021, and April 6, 2021, respectively.[2] (ECF Nos. 53, 54, 55, 56.) Plaintiffs retained their first expert, a police practices expert, in October 2019. (ECF No. 64-1 at 5.)

///

---

[1] Defendant Patricia Robinson-Hard filed a Notice of Joinder in Defendants' opposition (ECF No. 63) and is included in the references to the collective Defendants herein.

[2] The parties also stipulated to extend the supplemental expert disclosure deadline to May 6, 2021. (ECF No. 55.) The parties did not seek to extend the dispositive motion deadline, which is set for July 7, 2021. (*See id.*)

On December 16, 2020, the parties attended private mediation. (ECF No. 58-1 at 5.) Plaintiffs assert the mediation was productive, though the case ultimately did not settle that day. (*Id.*) After the mediation did not result in resolution of the action, Plaintiffs continued with expert discovery. (*Id.*)

On January 25, 2021, Plaintiffs served a subpoena on Dr. Tovar to be deposed on February 26, 2021. (*Id.*; ECF No. 64-1 at 2.) That same day, Defendants informed Plaintiffs they could not contact Dr. Tovar directly, as he was a Sacramento County employee, and that defense counsel would represent Dr. Tovar at his deposition. (*See* ECF No. 58-1 at 5; ECF No. 61-1 at 31.) During meet and confer discussions, Plaintiffs told Defendants they intended to call Dr. Tovar as a non-retained expert witness. (ECF No. 61-1 at 52, 56; ECF No. 64-1 at 4.) Thereafter, the parties agreed to depose Dr. Tovar as an expert witness on a date occurring after the expert disclosure deadline. (*See* ECF No. 58-1 at 5.)

Plaintiffs assert they were surprised when Defendants purported to represent Dr. Tovar because he was not retained as an expert by Defendants or a party to the action and Plaintiffs therefore believed he was considered an independent third-party witness. (*See id.* at 5–6, 8; ECF No. 64-1 at 2.) Indeed, when Plaintiffs later requested Defendants clarify their position regarding representation of Dr. Tovar, defense counsel only replied, "As far as I am aware, we will be representing Dr. Tovar for purposes of deposition and also intend to designate him as a non-retained expert." (ECF No. 61-1 at 52–53, 56; ECF No. 64-1 at 4.) Partly as a result of this misapprehension, Plaintiffs did not formally retain their own expert pathologist, Dr. Bennet Omalu, until January 28, 2021. (ECF No. 58-2 at 4; *see also* ECF No. 64 at 5 (Plaintiffs additionally indicate, despite considering forensic pathologists in January 2020, they decided not to formally retain their expert until after diligent mediation efforts had failed).)

Upon formally retaining Dr. Omalu, Plaintiffs determined he should not only review the written discovery materials generated by the Coroner's Department in September of 2019, but also conduct his own independent investigation. (ECF No. 58-2 at 4.) On February 12, 2021, Plaintiffs served a subpoena on the Sacramento Coroner's Office requesting production of autopsy slides and samples for examination and testing by Plaintiffs' expert. (*Id.*) The subpoena

1    was served approximately a week after expiration of the non-expert discovery deadline.  (*See*
2    ECF No. 54.)  That same day, defense counsel reiterated her request to Plaintiffs not to contact
3    the employees of the Coroner's Officer directly, on the basis that they are County employees and
4    defense counsel represents Sacramento County in this litigation.  (ECF No. 58-1 at 6; ECF No.
5    58-2 at 4–5; ECF No. 61-1 at 49.)

6    Plaintiffs again questioned why defense counsel was blocking their access to the
7    Coroner's Office for purposes of slide inspection.  (*See* ECF No. 58-1 at 8; *see also* ECF No. 58-2
8    at 5.)  Plaintiffs' confusion on this matter appears to be due, at least in part, to a series of
9    communications between Plaintiff's counsel and a staff member of the Coroner's Office, A.
10   Rogers, occurring in February 2021.  Specifically, Ms. Rogers represented to Plaintiffs' counsel
11   that "viewing the existing pathology slides did not require a subpoena or any other formal court
12   involvement," regardless of pending litigation.  (ECF No. 64 at 7–8; ECF No. 64-1 at 3.)  Ms.
13   Rogers further explained that it was Sacramento County Coroner's Office policy to "allow private
14   pathologists representing the decedent's family to view pathology slides by scheduling this
15   directly with their office," but that anything beyond a mere viewing of the existing slides (such as
16   sampling or creating new sample slides) required a court subpoena.  (ECF No. 64-1 at 3.)  After
17   explaining the process by which Plaintiffs would obtain new slides via subpoena, Ms. Rogers
18   indicated she would begin the process for scheduling a viewing appointment on February 16,
19   2021, and gave Plaintiffs' counsel the Coroner's Office's address to which the subpoena should
20   be served.  (*Id.* at 3–4.)  Plaintiffs served a subpoena on the Coroner's Office on February 12,
21   2021, setting the slides inspection date for March 15, 2021.  (*Id.* at 4; ECF No. 58-2 at 7–9.)  The
22   Coroner's Office later refused to comply with the subpoena solely at defense counsel's direction.
23   (ECF No. 64 at 2.)

24   After Defendants requested Plaintiffs not directly contact the employees of the Coroner's
25   Office, Plaintiffs requested Defendants clarify their position regarding access to the slides and
26   specifically whether they were representing the entire Sacramento County Coroners' Office.
27   (ECF No. 64-1 at 4–5; *see also* ECF No. 61-1 at 52.)  Plaintiffs maintain Defendants never
28   provided any clarification on this matter but simply prohibited Plaintiffs from conferring directly

4

with the Coroner's Office to examine the slides. (ECF No. 58-1 at 6; ECF No. 58-2 at 5; ECF No. 64-1 at 4, 7 n.2; *see also* ECF No. 61-1 at 48–50.) Further, when Plaintiffs submitted their requests to access the slides through Defendants, Defendants refused access on the basis that the fact discovery deadline had passed. (ECF No. 64-1 at 4–9; *see also* ECF No. 61-1 at 46.)

Defendants additionally filed a motion to quash the subpoena as untimely on February 18, 2021.[3] (ECF No. 57.) On February 23, 2021, Plaintiffs filed the instant motion to modify the scheduling order. (*See* ECF No. 58.) Specifically, Plaintiffs seek to modify the non-expert discovery deadline, so that their own expert may access the Decedent's histology slides and samples and conduct an independent review of the evidence. (ECF No. 58-1 at 2.) On March 18, 2021, Defendants filed an opposition (ECF No. 61) and on March 25, 2021, Plaintiffs filed a reply (ECF No. 64).

## II.   STANDARD OF LAW

Under Federal Rule of Civil Procedure ("Rule") 16, the Court is required to issue a scheduling order as soon as practicable, and the order "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Once a scheduling order has been filed pursuant to Rule 16, the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). When the motion to extend time is made after time has expired, the Court must also consider excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B).

The Ninth Circuit requires district courts to consider the following factors in determining whether to amend a Rule 16 scheduling order to reopen discovery:

> (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need

---

[3] Defendants' motion to quash was ultimately denied by the magistrate judge on March 8, 2021, on the basis that the parties' entire non-expert discovery dispute was untimely. (ECF No. 60.)

5

>     for additional discovery in light of the time allowed for discovery by
>     the district court, and (6) the likelihood that the discovery will lead
>     to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting *U.S. ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995)). "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" *Hunt v. Cty. of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) (quoting *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011)).

### III.   ANALYSIS

In the instant Motion, Plaintiffs seek to modify the current schedule to reopen non-expert discovery for the limited purpose of allowing their pathologist expert to inspect and sample pathology slides in possession of the Sacramento County Coroner's Office. (ECF No. 58-1 at 6.) In determining whether Plaintiffs have sufficiently met Rule 16's due diligence and good cause requirements, the Court considers each of the factors identified by the Ninth Circuit. *See Johnson*, 975 F.2d at 609; *City of Pomona*, 866 F.3d at 1066.

*i. Whether Trial is Imminent*

No trial dates have been set in this action. The dispositive motion deadline, which the parties have not sought to extend, is currently set for July 7, 2021. (*See* ECF No. 55 at 2.) On whole, this case remains in its early stages of litigation. Therefore, this factor weighs in favor of modification.

*ii. Whether the Request is Opposed*

Defendants oppose Plaintiffs' Motion. (ECF No. 61.) Thus, this factor weighs against modification.

*iii. Prejudice to the Non-Moving Party*

Plaintiffs argue the modification will not prejudice Defendants given that expert discovery is still underway, no dispositive motions have been filed, and "due to the pandemic, trial is not anticipated in the near future." (ECF No. 58-1 at 7, ECF No. 64 at 9–10.)

In opposition, Defendants contend that "it is highly prejudicial to allow a party to reopen discovery simply because they neglected to do something when discovery was open" and that

6

prejudice is presumed. (ECF No. 61 at 7–8 (citing *Sw. Marine Inc. v. Danzig*, 217 F.3d 1128, 1138 (9th Cir. 2000).) Yet the presumption of prejudice is a rebuttable one. *See Sw. Marine, Inc.*, 217 F.3d at 1138. Here, Defendants do not provide any specific argument showing how they would be prejudiced by a one-month extension of the discovery deadline where no trial dates have been set and no dispositive motions have been filed. (*See generally* ECF No. 61.) Nor do Defendants submit any argument that the burden of production on the Coroner's Office in permitting Plaintiffs access to the Decedent's slides is unduly prejudicial. (*See id.*)

Therefore, the Court finds the non-moving party will not be unduly prejudiced. This factor weighs in favor of modification.

*iv. Diligence/Excusable Neglect of the Moving Party*

Defendants argue Plaintiffs failed to act diligently in seeking to depose Dr. Tovar, retaining their own expert, and attempting to access the Decedent's autopsy slides. (*Id.* at 5–7.) They further argue Plaintiffs' failure to file the motion to modify until two weeks after the close of fact discovery shows a lack of diligence. (*Id.* at 8.) However, based on the following reasons and chronology of events, the Court finds these arguments unavailing.

In considering whether the moving party was diligent, the Court considers Plaintiffs' actions with respect to creating a workable Rule 16 order, attempting to obtain discovery within the guidelines established by the Court, and seeking a modification to the scheduling order. *See Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607–08 (E.D. Cal. 1999). Additionally, as the instant motion seeks to reopen discovery, the Court must also consider excusable neglect. Fed. R. Civ. P. 6(b)(1)(B).

Here, Plaintiffs worked diligently with Defendants to create a workable Rule 16 scheduling order. The parties timely filed a joint status report setting initial proposed deadlines (ECF No. 23) and thereafter filed stipulations to extend the discovery deadlines as necessary (ECF Nos. 53, 55; *see also* ECF Nos. 54, 56 (orders granting stipulations)). Moreover, in their previous stipulations to extend the discovery deadlines, the parties represented that they were all diligently litigating this matter. (*See* ECF No. 53 at 3; ECF No. 55 at 3; ECF No. 58-1 at 3.) Thus, as late as February 1, 2021, Defendants agreed that Plaintiffs were diligently seeking

discovery in this matter. (*See* ECF No. 55.) Indeed, prior to February 1, Plaintiffs exchanged multiple sets of written discovery with three sets of Defendants, took nine depositions, and retained their first expert — a correctional expert — in October 2019. (ECF No. 53 at 3; ECF No. 58-1 at 4; ECF No. 64 at 4.) Thus, the Court finds Plaintiffs have been diligent in obtaining discovery within the guidelines established by the Court.

The timeline set forth in Plaintiffs' briefing also demonstrates diligence in seeking to modify the schedule. After conducting the discovery previously outlined, the parties attended a private mediation on December 16, 2020. (ECF No. 58-1 at 5.) Plaintiffs assert the parties attempted to mediate sooner, but the mediator approved by Defendants had a full calendar until this date. (*Id.*) After the mediation was unsuccessful, Plaintiffs continued with expert discovery. On January 25, 2021, Plaintiffs served a deposition subpoena on Dr. Tovar. (ECF No. 64 at 5.) A dispute concerning Dr. Tovar's representation immediately arose. (*Id.*; *see also* ECF No. 61-1 at 31, 36.) On January 28, 2021, only three days after the discovery dispute over Dr. Tovar arose, Plaintiffs retained their own expert (also within the original March 9, 2021 expert witness disclosure deadline), and thereafter sought access to the autopsy slides for their expert to review. On February 12, 2021, Plaintiffs served a subpoena under Rule 45 on the Coroner's Office to examine the autopsy slides.[4] (*See* ECF No. 58-2 at 4.) A dispute concerning Plaintiffs' access to the slides immediately arose.[5] (*See id.* at 4–5.) On February 18, 2021, after the parties' meet and confer attempts failed to resolve the issue, Defendants filed a motion to quash the subpoena. (ECF No. 57.) Only five days later, on February 23, 2021, Plaintiffs filed the instant motion. (ECF No. 58.)

Based on this chronology, it does not appear to the Court that Plaintiffs unduly delayed in seeking discovery or seeking modification of the schedule when the need to do so became apparent. Thus, even though Plaintiffs' motion was filed after the close of fact discovery, the

---

[4] Under Rule 45, a party may serve a subpoena commanding a nonparty to produce and permit inspection of documents and things. Fed. R. Civ. P. 45.

[5] The parties dispute whether Plaintiffs' Rule 45 subpoena is subject to the fact discovery deadline. The merits of this dispute are discussed in greater detail under the Court's analysis of the foreseeability factor.

Court nonetheless finds Plaintiffs acted diligently in their pursuit of discovery and provide sufficient justification for the timing of their motion. *See Neal v. California City*, No. 1:14-CV-00269-AWI, 2015 WL 251848, at * 4–5 (E.D. Cal. Jan. 20, 2015) (granting modification after close of non-expert discovery deadline where plaintiffs immediately sought modification after gaining new information); *see also J.M. v. Cty. of Stanislaus*, No. 1:18-cv-01034-LJO-SAB, 2019 WL 6879676, at *14 (E.D. Cal. Dec. 17, 2019) (finding defendants exercised reasonable diligence where they immediately requested additional discovery after close of discovery once the expert informed them of the need for an independent examination); *Andreoli v. Youngevity Int'l, Inc.*, No. 16-cv-02922-BTM-JLB, 2019 WL 1574319 (S.D. Cal. Apr. 10, 2019) (granting motion two months after the close of discovery based on finding of diligence/excusable neglect).

Furthermore, as to the timing for seeking to depose Dr. Tovar and retaining their own expert, the Court is satisfied that Plaintiffs acted diligently. Defendants assert Plaintiffs should have deposed Dr. Tovar sooner, rather than waiting until the eve of the discovery cutoff. (ECF No. 61 at 6.) While the Court may agree with this sentiment, it declines to penalize Plaintiffs for timely serving a deposition subpoena on an expert witness over a month prior to the close of the expert witness deadline, where the date on which the expert was to be deposed also fell within that deadline. Moreover, Plaintiffs maintain they decided to complete their discovery relating to the pathology expert and the autopsy slides after the parties' December 16, 2020 private mediation did not result in resolution of the action. (ECF No. 58-1 at 4–5.) Plaintiffs also aver that, while they began discussion and consideration of retaining a forensic pathologist as early as January 2020, they could not determine that formal retention was necessary as "most of the facts were unknown and the material legal disputes had not yet been identified" at that early stage of the litigation. (ECF No. 64 at 5.) The Court expresses some skepticism as to the latter explanation as justification for failing to retain an expert sooner. However, the Court cannot say the decision to wait to pursue this particular, more costly area of discovery until after determining whether the case would settle was entirely unreasonable under the circumstances. Nor does the Court find Plaintiffs' delay in conducting discovery on this singular issue amounts to an overall lack of diligence in pursuing discovery in this action where, prior to the mediation, Plaintiffs

exchanged several rounds of written discovery and deposed multiple other witnesses.  (*See id.* at 4; *see also* ECF No. 53 at 3; ECF No. 58-1 at 4.)  Indeed, the Court reminds Defendants that, per the stipulation counsel certified under penalty of Rule 11, the parties were diligent in pursuing the litigation through at least February 1, 2021.  (*See* ECF No. 55 at 3.)

Based upon the facts presented to the Court, it appears on balance that Plaintiffs were diligent in their efforts to obtain discovery within the deadlines set by the scheduling order and to seek modification of the scheduling order when the need to do so became apparent.  Therefore, this factor weighs in favor of modification.

*v.  Foreseeability of the Need for Additional Discovery*

With respect to the foreseeability of the need for additional discovery, it was foreseeable that Plaintiffs would need to conduct discovery relating to a forensic pathology expert and the pathology slides.  Plaintiffs concede the need for this discovery was foreseeable, as they considered retaining a forensic pathologist as early as January 2020.  (ECF No. 64 at 5.)  However, Plaintiffs contend it was unforeseeable that they would be unable to complete this discovery due to the disputes over Dr. Tovar's representation and Defendants' assertion of possession and control over the pathology slides.[6]  (*See* ECF No. 58-1 at 5; ECF No. 58-2 at 5; ECF No. 64 at 6–7.)

The Court is somewhat skeptical of Plaintiffs' argument with respect to Dr. Tovar.  Plaintiffs' argument is based on the contention that the Coroner's Office is not a Defendant or party to this litigation, both sides indicated their intent to "designate him as a non-retained expert," and Plaintiffs therefore believed Dr. Tovar was an independent, neutral third-party witness.  (*See* ECF No. 58-1 at 5, 8; ECF No. 58-2 at 3; ECF No. 61-1 at 3, 52–53, 56; ECF No. 64-1 at 2, 4.)  However, as Defendants aptly point out, Plaintiffs did not sue the County Sheriff's Department and Department of Health Services, but correctly named the County of Sacramento as the municipal Defendant.  (ECF No. 61 at 3 (citing ECF No. 43).)  Thus, Plaintiffs appear to

---

[6] The parties additionally acknowledged that some unforeseeable delays in the litigation were caused due to the ongoing COVID-19 pandemic, the intervening mediation, the holidays, and the availability of witnesses and counsel.  (*See* ECF No. 53 at 3; ECF No. 55 at 3.)

10

have been aware of the interplay between the County departments and their relationship to the County from the start. Moreover, in a wrongful death case in which, as here, the cause of death is relevant to the plaintiff's claims and is likely disputed, it seems unreasonable to believe retention of a private expert might not be necessary because the County pathologist's "neutral" testimony would suffice. Nor is it reasonable to believe the County Coroner's pathologist would attend a civil deposition unrepresented by County Counsel. Nevertheless, it is also unclear why Defendants initially refused to produce Dr. Tovar for a timely-noticed expert deposition on the basis that fact-discovery had closed. (*See* ECF No. 61-1 at 3, 36.) To this limited extent, the parties' dispute over Dr. Tovar may be deemed unforeseeable.

Plaintiffs' foreseeability argument with respect to the discovery dispute over the autopsy slides is a closer call. Plaintiffs contend they reasonably believed they could directly access the slides at any time through the Coroner's Office, based on staff representations that the Coroner's Office has its own longstanding procedure for providing access to samples for independent evaluation by private pathologists representing a decedent's family, regardless of pending litigation. (ECF No. 58-1 at 8; ECF No. 58-2 at 5; ECF No. 64 at 7–8; ECF No. 64-1 at 3–4.) Plaintiffs also argue their belief was reasonably supported by various California code sections that show the Coroner's Office has its own legal obligations to the family of a decedent and the public. (ECF No. 58-1 at 8 (citing, *e.g.*, Cal. Health & Safety Code § 7100 (right to control the disposition of the remains of a deceased person vests in agent under power of attorney, surviving spouse, children, etc.)).) In addition to these facts, Plaintiffs also contend their Rule 45 third-party subpoena did not constitute a discovery device and was therefore not subject to the fact-discovery deadline.[7] (*See* ECF No. 61-1 at 4, 52; ECF No. 64-1 at 6–7.)

With respect to Plaintiffs' Rule 45 subpoena argument, Defendants assert the "[a]uthority is clear [that] . . . '[Rule] 45 subpoenas . . . constitute pretrial discovery that must be served within the specified discovery period.'" (ECF No. 61 at 7 (citing *Supply v. City of Visalia*, No. 1:15-CV-0672 AWI EPG, 2017 WL 4652698, at *2 (E.D. Cal. Oct. 17, 2017)).) In actuality, there appears

---

[7] Alternatively, Plaintiffs appear to argue that the subpoena was subject to the expert-discovery deadline, not the fact-discovery deadline. (*See* ECF No. 58-1 at 2.)

to be a split of authority among the district courts as to this issue, the minority view being that subpoenas served on nonparties falls outside the purview of discovery. *See Dreyer v. GACS Inc.*, 204 F.R.D. 120, 122 (N.D. Ind. 2001) (collecting cases). Nonetheless, the majority of jurisdictions generally hold that "a subpoena seeking [production or inspection] from a third-party under Rule 45(a)(1)(C) is a discovery device and therefore subject to a scheduling order's general discovery deadlines." *Rodriguez v. Beard*, No. 2:14-cv-1049 MCE KJN P, 2016 WL 6393755, at *2 (E.D. Cal. Oct. 28, 2016) (quoting *Dreyer*, 204 F.R.D. at 122).

More importantly, however, Defendants do not address Plaintiffs' arguments with respect to the representations the Coroner's Office staff made to Plaintiffs' counsel or Plaintiffs' California law-based challenge to Defendants' asserted possession and control over the Decedent's autopsy slides.[8] (*See generally* ECF No. 61.) Based on the identified state law requirements specific to the Coroner's Office and Ms. Rogers's representations to Plaintiffs' counsel, Plaintiffs' belief that they could access the slides independent of the fact discovery deadline or Defendants' permission is not unreasonable. Thus, Defendants' sudden obstruction of Plaintiffs' ability to access the Decedent's autopsy slides may have been unforeseeable, as Plaintiffs contend. At a minimum, Plaintiffs' counsel's reliance on the Coroner's Office's representations warrants a finding of at least excusable neglect to reopen discovery.

Under these circumstances, the Court declines to find Plaintiffs' failure to seek access to the slides prior to the close of fact-discovery is the result of a lack of diligence but rather is inclined to find any noncompliance occurred due to reasonably unforeseeable matters or excusable neglect. *See Jackson*, 186 F.R.D. at 608; Fed. R. Civ. P. 6(b)(1)(B); *Andreoli*, 2019 WL 1574319. Accordingly, this factor weighs slightly in favor of modification.

---

[8] The Court declines to issue a finding with respect to this tangential issue as it is not fully addressed by the parties, but acknowledges California law may provide that Plaintiffs, as next of kin to the Decedent, should have access to the Decedent's autopsy slides. *See Walsh v. Caidin*, 232 Cal. App. 3d 159, 161 (1991) (in wrongful death/medical malpractice action, surviving spouse had sole authority over disposition of the decedent's remains, and the doctor and corporation had no legal right to an autopsy for civil discovery purposes); *Newman v. Sathyavaglswaran*, 287 F.3d 786, 794 (9th Cir. 2002) (citing *Walsh* with approval, discussing exclusive right of next of kin to possess the bodies of their deceased family members).

          *vi.   Likelihood the Discovery Will Lead to Relevant Evidence*

There is a strong likelihood that the discovery will lead to relevant evidence since the cause of death and likelihood of the occurrence of certain conditions leading to the Decedent's death are significant to Plaintiffs' claims.  Accordingly, this factor weighs strongly in favor of modification.  *See also Landes v. Skil Power Tools*, No. 2:12-cv-01252-MCE-KJN, 2013 WL 6859837, at *3 (E.D. Cal. Dec. 30, 2013) (quoting *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011) ("A scheduling order which results in the exclusion of evidence is . . . a drastic sanction.")).

Having considered the *City of Pomona* factors, the Court finds good cause exists to modify the scheduling order.  *City of Pomona*, 866 F.3d at 1066; *Little*, 863 F.2d at 685.

**IV.   CONCLUSION**

For the reasons set forth above, the Court hereby GRANTS Plaintiffs' Motion to Modify the Scheduling Order (ECF No. 58) as follows:

1. Non-expert discovery is reopened and the deadline is extended for the limited purpose of allowing Plaintiffs' pathologist expert, Dr. Bennet Omalu, to inspect and sample the pathology slides of the Decedent Marshall Miles which are in possession of the Sacramento County Coroner.  All such non-expert discovery shall be completed no later than 30 days after the date of electronic filing of this Order;

2. The initial expert disclosure deadline is extended to 30 days after the expiration of the extended non-expert discovery deadline;

3. The supplemental expert disclosure deadline is extended to 30 days after the expiration of the initial expert disclosure deadline; and

4. No other deadlines set forth in the scheduling order are modified.

No further extensions of the fact-discovery deadlines will be granted.

IT IS SO ORDERED.

DATE: June 9, 2021

                                                        Troy L. Nunley
                                                        United States District Judge